The OXFORD FINANCE COMPANIES,
INC., Appellant,

v.

Jossie A. VELEZ and Mid–Tex Investments, a Texas General Partnership, and as Partners Individually, C.L. Keaton, Ed Laughlin and William Hill, Appellees.

No. 3–90–001–CV.

Court of Appeals of Texas,
Austin.

April 10, 1991.

Rehearing Overruled May 8, 1991.

M.M. Wade, Belton, for appellant.

Charla Smart, Ted Smith, Jr., P.C., Killeen, for Jossie A. Velez.

Jack W. Jones, Jr., David Bridges, Law Offices of Jack W. Jones, Jr., Temple, for Mid–Tex Investments, a Texas General Partnership, and as Partners Individually, C.L. Keaton, Ed Laughlin & William Hill.

Before SHANNON, C.J., and ABOUSSIE and JONES, JJ.

JONES, Justice.

Jossie Velez contracted with Major Material Corporation to install aluminum siding on her home. The Oxford Finance Companies, Inc. ("Oxford"), as permanent lender, accepted assignment of the contract as well as the lien Major Material had obtained thereunder. When a dispute arose and Velez discontinued her payments, Oxford foreclosed. Mid–Tex Investments ("Mid–Tex") purchased the home at the foreclosure sale. When Mid–Tex attempted to take possession, Velez sued all three companies, alleging: (1) that Major Material had violated, among other statutes, the Texas Deceptive Trade Practices Act, Tex. Bus. & Com.Code Ann. §§ 17.41–.63 (1987 & Supp.1991) (DTPA), and the Home Solicitation Transactions Act, Tex.Rev.Civ.Stat. Ann. arts. 5069–13.01—5069–13.07 (1987)

(HSTA); and (2) that, as a result of the violations, Major Material and Oxford, as its assignee, were liable to her in damages, and the lien under which the house was sold was void, precluding Mid–Tex from taking good title. Mid–Tex brought a cross-claim against Oxford for restitution and recovery from Oxford of the purchase price it had paid at the sale. The jury found violations of the DTPA and HSTA by Major Material, which voided the underlying contract, the lien, and the foreclosure sale. The trial court rendered judgment on the jury's verdict, declaring the lien and foreclosure sale void, assessing damages and attorney's fees against Major Material and Oxford, and also assessing "additional damages" under the DTPA against Major Material. The court also rendered judgment that Mid–Tex obtain restitution from Oxford.

On appeal, Oxford complains that the trial court erred in three respects: (1) awarding any damages against Oxford, or in the alternative, awarding damages in excess of the amount Velez had paid Oxford under the contract; (2) awarding any attorney's fees against Oxford or, in the alternative, awarding the total attorney's fees jointly against Oxford and Major Material; and (3) allowing Mid–Tex to recover the purchase price it had paid at the foreclosure sale as well as prejudgment interest on that amount. Major Material did not appear at trial and has not perfected an appeal. We will modify in part and, as modified, affirm the judgment.

### THE FACTS

Desiring to improve her home by installing aluminum siding, Velez contracted with Major Material to perform the work and supply the materials. Major Material duly obtained and recorded a mechanic's and materialman's lien on Velez's home and prepared the necessary financing documents. Major Material then assigned the lien and installment contract to First National Indemnity Mortgage Corporation, a loan broker, which in turn assigned the lien and contract to Oxford, the lender that ultimately supplied the needed funds. Major Material completed construction, and

Velez paid Oxford $1,350 under the terms of the contract. When Velez later discovered the siding had been improperly installed, she stopped making payments to Oxford under the contract.

More than a year after Velez defaulted on her payment obligation, Oxford foreclosed on its lien and sold the property to Mid–Tex for $14,760. When Mid–Tex attempted to take possession of the home, Velez filed this action. On the basis of alleged violations of the DTPA and the HSTA, she sought declaratory relief voiding the contract, lien, and foreclosure sale. She also sought damages and attorney's fees. The jury found Major Material had committed various deceptive trade practices and had violated the HSTA. The jury refused to find that Oxford had violated the HSTA, and no questions were submitted seeking a finding of Oxford's liability based on its own actions. The trial court rendered judgment for Velez against Oxford and Major Material, declaring her entitled to her home, holding the contract, trust deed, lien, and foreclosure sale void, and awarding her $7,800 damages and $25,000 attorney's fees. In addition, the court awarded Mid–Tex restitution from Oxford and prejudgment interest. Oxford complains of all these awards.

### VELEZ'S DAMAGES

Oxford contends in its first two points of error that the trial court erred in awarding Velez affirmative relief against it, or, in the alternative, in subjecting it to liability jointly with Major Material for the entire amount of damages assessed.

The installment contract Velez executed to finance the improvements contained a provision required by the Federal Trade Commission to be included in all consumer credit contracts:

### NOTICE

ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF

GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

*See* 16 C.F.R. § 433.2(a) (1990). The provision notifies all parties to the contract that an assignee will be subject to any claims and defenses the debtor has against the seller.

■ Oxford's initial argument is that Velez is precluded from recovering affirmative relief from Oxford by her failure to obtain a jury finding that she had received "little or nothing of value" under the contract. In support of this argument, Oxford relies on the FTC's "statement of basis and purpose" for the adoption of Rule 16 C.F.R. § 433.2(a). An official comment to this Rule explains that, under contracts which include the proper notice,

> [c]onsumers will not be in a position to obtain an affirmative recovery from a creditor, unless they have actually commenced payment and received little or nothing of value from the seller. In a case of non-delivery, total failure of performance, or the like, we believe that the consumer is entitled to a refund of monies paid on account.

The above-quoted observation was apparently made to explain why the FTC declined to adopt a version of the rule that would have limited consumers to asserting their claims against assignees only in the context of defending a suit by the assignee for collection of payments due under the contract. We do not agree that the comment requires a plaintiff to obtain a finding that she has received little or nothing of value under the contract in order to recover affirmative relief from her creditor.

The clear and unambiguous language of the contractual provision notifies all potential holders that, if they accept an assignment of the contract, they will be "stepping into the seller's shoes." The creditor/assignee will become "subject to" *any* claims or defenses the debtor can assert against the seller. The notice does not say that a seller will be liable for the buyer's damages only if the buyer received little or nothing of value under the contract. Nor does the notice purport to limit a creditor/assignee's liability in such fashion. Because there is no requirement in the notice that a buyer make such a showing before recovering from the seller or the creditor/assignee, we conclude that Velez may obtain affirmative relief from Oxford without a jury finding that she received little or nothing of value under the contract. We overrule Oxford's first point of error.

■ In its second point of error, Oxford argues that, even if Velez may recover against it, she is limited to recovering the amount she paid under the contract. We agree. This point of error is controlled by *Home Savings Association v. Guerra*, 733 S.W.2d 134 (Tex.1987). The facts in *Guerra* are essentially the same as those in the present case; however, for the sake of clarity, we will review them briefly here.

Mr. Guerra hired a builder to construct improvements to his home. After completing the work in a substandard manner, the builder assigned the financing documents to Home Savings Association. Subsequently, the rock siding constructed by the builder crumbled, requiring Guerra to spend $25,000 to repair the damage. After a trial, Guerra was awarded judgment against both Home Savings and the builder for all of his damages and attorney's fees. The court of appeals affirmed the award, holding that an assignee of commercial paper could be held liable for seller misconduct in excess of the amount the debtor had paid the assignee under the contract. Reversing, the supreme court observed that if a buyer could recover *all* of the damages resulting from the seller's faulty performance from a creditor/assignee, the creditor would become a guarantor or insurer of the seller's performance. *Guerra*, 733 S.W.2d at 136. The court concluded that the FTC did not intend to make commercial paper assignees guarantors of a seller's performance. In so holding, the court observed that the sentence contained in the notice which reads, "RECOVERY HEREUNDER BY THE DEBTOR SHALL

NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER," expressly limits the buyer's recovery from the creditor to the amount the buyer had already paid. *Id. See also* Snell, *Assignee Liability Under the Texas Consumer Credit Code*, 8 St. Mary's L.J. 696, 703 (1977).

The language of the required notice has not changed since the supreme court decided *Guerra*. The notice in the contract assigned to Oxford contains the same express limitation on the amount Velez is entitled to recover from Oxford. Accordingly, we follow *Guerra* and hold that Velez's recovery is limited to the $1,350 she had paid under the contract.

■ Velez argues that, notwithstanding the contractual limitation on damages recoverable from Oxford, the trial court's award does not exceed the amount she paid under the agreement. In this connection, Velez asserts that the $14,760 purchase price paid by Mid–Tex at the foreclosure sale should be counted as part of the "amounts paid by the debtor hereunder." In light of the nullification of the foreclosure sale, we decline to treat the purchase price as money paid "indirectly" by Velez to Oxford. Oxford's second point of error is sustained.

Oxford complains in its third and fourth points of error of the trial court's computation of damages under the DTPA. Because we have concluded that Velez may recover from Oxford only the amount she has paid under the contract, and because Oxford's calculation would not reduce the damages award below this cap, it is unnecessary for us to address these points.

## ATTORNEY'S FEES

■ By its fifth and sixth points of error, Oxford challenges the award of attorney's fees to Velez. First, Oxford argues that, because Velez allegedly failed to show a right to recover from Oxford, Oxford should pay none of her attorney's fees. For the reasons stated above, we conclude that Velez has shown a right to recover

from Oxford; therefore, she may also recover attorney's fees from it. The question we must then address is whether, as Oxford alleges in its sixth point, the trial court erred in assessing Velez's total award of attorney's fees jointly against Major Material and Oxford.

In charging the jury, the court submitted three questions concerning attorney's fees, two of which are relevant to this discussion.[1] Question 26 asked the jury to determine the total amount of Velez's reasonable and necessary attorney's fees. Question 28 asked for a determination "solely with regard to the claims of the Plaintiff against Oxford Finance Companies, Inc." The following instruction accompanied question 28:

> You are instructed in connection with your answer to Special Issue No. 28 that one Defendant is not required to pay the attorney fees, if any, incurred by Plaintiff in asserting claims against the other Defendants unless the claims against the other Defendants overlap substantially with the claim or claims against that Defendant.

Oxford contends that Velez did not object to the submission of the question or instruction. Velez does not challenge this assertion.

Responding to question 26, the jury found $25,000 to be a reasonable and necessary fee for Velez's attorney's services in preparing for and trying the entire case. In addition, the jury found $2,500 to be a reasonable and necessary fee if the case were appealed. In response to question 28, the jury found $8,000 to be a reasonable and necessary fee for the attorney's preparation of claims solely against Oxford. The trial court apparently disregarded the answer to question 28 on its own motion and rendered judgment assessing the entire award of attorney's fees jointly against Major Material and Oxford.

*Guerra* again controls the disposition of this issue. The supreme court in *Guerra*

---

1. The third question, number 27, was requested by Oxford and asked the amount of reasonable and necessary attorney's fees Oxford had in-

curred in defending against Velez's claim of inadequate notice.

did not consider the issue of allocation of attorney's fees among defendants. However, Home Savings, the creditor/assignee, challenged the court's assessment of the total attorney's fees award against both Home Savings and the builder. The court stated that,

the special issue on attorneys [sic] fees requested the jury to find Guerra's attorneys fees for the entire case, rather than separately allocating the fees to each claim. Therefore, because Home Savings did not object to this broad attorneys fees issue, any complaint that the trial court failed to segregate the fees as to each claim has been waived.

*Guerra*, 733 S.W.2d at 137. This statement implies that, had a separate issue been requested, the court could have properly assessed fees in accordance with the jury's answer. This position is consistent with that court's determination that a buyer's recovery against a creditor/assignee is limited.

In addition, having failed to raise the issue in the trial court, Velez may not object to the allocation of attorney's fees based on the jury's answer to question 28 for the first time on appeal. *See* Tex.R. App.P. 52(a). Velez, by her silence, deprived the trial court of the opportunity to hear argument on the legal propriety of allocating attorney's fees among defendants.

Based on the language in *Guerra* respecting segregation of attorney's fees, on Velez's failure to object to submission of the allocation question and instruction at trial, and on the policy concerns that limit the assignee's underlying liability, we conclude that Velez may recover from Oxford only those attorney's fees, as found by the jury, that resulted from her attorney's pursuit of claims against Oxford. We sustain Oxford's sixth point of error.

## MID–TEX'S DAMAGES

■ In points of error seven, eight, and nine, Oxford complains of the award to Mid–Tex of damages in the amount of the purchase price paid at the foreclosure sale. Oxford challenges the pleadings, evidence, and jury findings as insufficient to support the award. We will discuss these points together.

Oxford contends that "there were no jury findings, pleadings or evidence to support the award of damages to Mid–Tex on any theory of law." Mid–Tex defends its recovery of the purchase price, arguing that Oxford would be unjustly enriched if allowed to retain the money. Initially, we must determine whether Mid–Tex's pleadings support the judgment. We conclude they do.

■ Unjust enrichment is not an independent cause of action; however, an action for restitution based on unjust enrichment will lie "to recover money received on a consideration that has failed in whole or in part." *Barrett v. Ferrell*, 550 S.W.2d 138, 143 (Tex.Civ.App.1977, writ ref'd n.r.e.). Before a party is entitled to restitution, however, he must show not only that the party from whom he is seeking restitution was unjustly enriched, but also that that party "had wrongfully secured a benefit or had passively received one which it would be unconscionable for him to retain." *Id.* Furthermore, a party's right to recover under a theory of unjust enrichment does not depend on the other party's commission of a wrongful act. *Fun Time Centers, Inc. v. Continental Nat'l Bank*, 517 S.W.2d 877, 884 (Tex.Civ.App.1974, writ ref'd n.r.e.).

Mid–Tex had the burden to establish that it had paid money to Oxford, that the consideration Oxford gave for the money later failed in whole or in part, and that it would be unconscionable for Oxford to retain the money. Mid–Tex's trial pleading contained an assertion that if Velez succeeded in voiding the lien and foreclosure sale, Mid–Tex would lose all rights to the property. Mid–Tex alleged it had paid Oxford for the property and that Oxford would be unjustly enriched if the sale was declared void and it was allowed to keep the sale proceeds. In the same paragraph of this pleading, Mid–Tex sought recovery of the purchase price, improvement expenditures, and first lien and property tax payments it had made. Mid–Tex contends that these

allegations were sufficient to apprise Oxford of the recovery it sought. We agree. *See* Tex.R.Civ.P. 47. The allegations gave Oxford fair notice of Mid–Tex's claim for restitution. The sufficiency of the notice is demonstrated by Oxford's denial, in its trial pleading, that any unjust enrichment had occurred. We overrule Oxford's seventh point of error.

■ Oxford next directs our attention to the alleged inadequacy of the evidence to support restitution. Prior to submission of the case to the jury, Oxford entered into two stipulations whereby it judicially admitted that it had received $14,760 from Mid–Tex as the purchase price of Velez's home, and that, had Mid–Tex known of a defect in the underlying lien, it would not have bought the property. Oxford specifically stated that the latter stipulation was not an admission of a defect in the lien. The jury's verdict resulted in a judgment voiding the lien. Mid–Tex contends that, because Oxford admitted Mid–Tex paid money it would not have paid had it known of a defect, and because the court declared the lien and sale void, no additional evidence or jury findings were necessary for Mid–Tex to obtain restitution. We agree.

Oxford admitted that the property was the consideration for the money received. The jury's finding that the builder had violated the HSTA rendered the lien and foreclosure sale void, causing Oxford's consideration for the purchase price to fail completely. While the failure was not the result of any wrongful act by Oxford, no wrongful act need be shown by a party seeking restitution based on unjust enrichment. *Fun Time Centers,* 517 S.W.2d at 884.

Oxford's argument could be construed to urge the necessity of Mid–Tex's obtaining a jury finding that Oxford's retention of the money would be unconscionable. The argument is without merit. If Oxford is not compelled to restore the purchase price to Mid–Tex, Oxford will have gained almost $15,000 although it gave Mid–Tex nothing of value in return. As a matter of law, Oxford's retention of the purchase price under these circumstances would be unconscionable. We conclude that both the evidence and the jury findings were sufficient to support the court's judgment awarding Mid–Tex recovery of the purchase price. We overrule Oxford's eighth and ninth points of error.

■ Oxford's tenth point of error challenges the award to Mid–Tex of prejudgment interest on the purchase price. Oxford asserts that Mid–Tex's claim did not become due and payable on the date of the sale, as Mid–Tex argues, but instead became due, at the earliest, when Mid–Tex filed its first pleading seeking restitution. The pleading, it suggests, is the first communication which can be construed as a demand for repayment of the purchase price.

Oxford cites a number of cases in support of the contention that a sum certain is not due and payable until a demand has been made therefor. The rule is otherwise. As Justice Calvert stated in *Texas Co. v. State,* 154 Tex. 494, 281 S.W.2d 83, 92 (1955), "[I]nterest as damages is recoverable as a matter of law when the principal damages are fixed by conditions existing at the time the injury is inflicted." At the time of the foreclosure sale, Major Material had already committed the violations making the lien void. Therefore, Mid–Tex's right to restitution was fixed by the conditions existing at the time of the foreclosure sale. Liability for prejudgment interest as damages follows as a matter of law. We overrule Oxford's tenth point of error.

We affirm the trial court's judgment insofar as it awards restitution to Mid–Tex and allows Mid–Tex prejudgment interest on the purchase price from the date of the foreclosure sale. We modify the judgment insofar as it assesses total damages and attorney's fees jointly against Oxford and Major Material, by limiting Velez's recovery from Oxford to $1,350 in damages and $8,000 in attorney's fees.