ACCEPTED
06-14-00106-CV
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
3/9/2015 9:42:31 AM
DEBBIE AUTREY
CLERK

NO. 06-14-00106-CV

IN THE SIXTH COURT OF APPEALS

TEXARKANA, TEXAS

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS

3/9/2015 9:42:31 AM

DEBBIE AUTREY
Clerk

PETER G. MILNE, INDIVIDUALLY, PETER G. MILNE, P.C. &
HEALY, MILNE & ASSOCIATES, P.C.,

*Appellants,*

V.

VAL RYAN & JOY RYAN,

*Appellees.*

───────────────────────────────────────────

Appeal from the 4th Judicial District Court of Rusk County, Texas
The Honorable J. Clay Gossett, Presiding

───────────────────────────────────────────

# BRIEF OF APPELLEES

───────────────────────────────────────────

JAMES A. HOLMES                      JOHN R. MERCY
Texas Bar No. 00784290               Texas Bar No. 13947200


**THE LAW OFFICE OF JAMES HOLMES, P.C.**   **MERCY CARTER TIDWELL, LLP**
212 South Marshall                   1724 Galleria Oaks Drive
Henderson, Texas 75654               Texarkana, Texas 75503
(903) 657-2800                       (903) 794-9419
(903) 657-2855 (fax)                 (903) 794-1268 (fax)
jh@JamesHolmesLaw.com                jmercy@texarkanalawyers.com

**ATTORNEYS FOR APPELLEES VAL & JOY RYAN**

**ORAL ARGUMENT REQUESTED**

In addition to the counsel listed in Appellants' Brief, please note the appearance of the following additional counsel for Appellees:

John R. Mercy
Texas Bar No. 13947200

**MERCY CARTER TIDWELL, LLP**
1724 Galleria Oaks Drive
Texarkana, Texas 75503
(903) 794-9419
(903) 794-1268 (fax)
jmercy@texarkanalawyers.com

TABLE OF CONTENTS

IDENTITY OF PARTIES & COUNSEL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii-iii

INDEX OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv-vi

ISSUES PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vii

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9-24

1.    Appellants do not have standing to appeal the trial court's certification of Appellees' claims against Richard Hicks because the order does not "injuriously affect" Appellants and "merely affects the rights of others.". . . 9

2.    Even assuming Appellants have standing, the trial court did not abuse its discretion by concluding that members of a class consisting of all person who "paid a fee for enjoined services performed by Richard Hicks" were presently ascertainable by reference to objective criteria. . . . . . . . . . . . . . .13

3.    Even assuming Appellants have standing, the trial court did not abuse its discretion by certifying Appellees' claims of unconscionable conduct and breach of fiduciary duty because to allow Hicks to retain fees he was expressly enjoined from collecting would be unconscionable as a matter of law. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16

4.    Even assuming Appellants have standing, the trial court did not abuse  its discretion when it concluded that Appellees' claims of unconscionable conduct and breach of fiduciary duty were typical of the absent class members because all of the class members' claims arise from the same violation of the 2001 injunction and and all class members seek the same relief. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

5.    The trial court did not abuse its discretion when it certified Appellees' request for declaratory judgment because the money damages flow directly and automatically from the requested declaration. . . . . . . . . . . . . . . . . . . . . . 22

CONCLUSION & PRAYER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

CERTIFICATE OF COMPLIANCE WITH RULE 9.4(E) . . . . . . . . . . . . . . . . . . . . . . . 27

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

APPENDIX

    2001 Agreed Permanent Injunction . . . . . . . . . . . . . . . . . . . . . . . . . . .TAB A

    Hicks' Amended Answers to Plaintiffs' 1st Interrogatories . . . . . . . . . TAB B

**CASES**                                                          **PAGE(S)**

*Allison v. Citgo Petroleum Corp.,* 151 F.3d 402 (5th Cir. 1998) . . . . . . . . . . . . . . 22

*Bailey v. Kemper Cas. Ins. Co.,* 83 S.W.3d 840
  (Tex. App. — Texarkana 2002, pet. dism'd w.o.j.) . . . . . . . . . . . 13-15, 19, 20-21

*Bhatia v. Piedrahita*, 756 F.3d 211 (2d Cir. 2013) . . . . . . . . . . . . . . . . . . . . . 10-12

*Bratcher v. Monumental Life Insurance Co.,*
 365 F.3d 408 (5th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22-24

*Brown v. Todd*, 53 S.W.3d 297 (Tex. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Cedar Crest Funeral Home, Inc. v. Lashley*, 889 S.W.2d 325
  (Tex. App. — Dallas 1993, no writ) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Charlie Thomas Courtesy Leasing, Inc. v. Taylor*, 44 S.W.3d 684
  (Tex. App. — Houston [14th Dist.] 2001, no pet.) . . . . . . . . . . . . . . . . . . . . . 13

*Chastain v. Koonce*, 700 S.W.2d 579, 583 (Tex. 1985) . . . . . . . . . . . . . . . . . . . . 16

*Childs v. Haussecker,* 974 S.W.2d 31 (Tex. 1998) . . . . . . . . . . . . . . . . . . . . . . . . 17

*City of the The Colony v. N. Tex. Mun. Water Dist.,* 272 S.W.3d 699
  (Tex. App. — Fort Worth 2008, pet. dism'd) . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Clements v. League of United Latin Am. Citizens*, 800 S.W.2d 948
  (Tex. App. — Corpus Christi 1990, no writ) . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Ford Motor Co. v. Sheldon*, 22 S.W.3d 444 (Tex. 2000) . . . . . . . . . . . . . . . . . . . 13

*In the Interest of L.K.*, 2012 Tex. App. LEXIS 10569
  (Tex. App. — Tyler 2012, pet. denied) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

*In the Interest of R.T.M.*, 2014 Tex. App. LEXIS 12935
  (Tex. App. — Texarkana 2014, no pet. h.) . . . . . . . . . . . . . . . . . . . . . . . 9-10, 12

*In re: Turner Bros. Trucking Co.*, 8 S.W.3d 370
  (Tex. App. — Texarkana 1999, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16-17

*Intratex Gas Co. v. Beeson*, 22 S.W.3d 398 (Tex. 2000) . . . . . . . . . . . . . . . . . . . . . 13

*James v. City of Dallas*, 254 F.3d 552 (5th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . 20

*Kendrick v. Allright Parking,* 846 S.W.2d 453
  (Tex. App. — San Antonio 1992, writ denied) . . . . . . . . . . . . . . . . . . . . . . 17

*Latham v. Castillo*, 972 S.W.2d 66 (Tex. 1998) . . . . . . . . . . . . . . . . . . . . . . . . 16

*Mack v. McKenzie,* 900 S.W.2d 445
  (Tex. App. — Texarkana 1995, writ denied) . . . . . . . . . . . . . . . . . . . . . . . . 17

*Matbon, Inc. v. Gries,* 287 S.W.3d 739
  (Tex. App. — Eastland 2009, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*McAllen Med. Ctr. v. Cortez, Inc.*, 66 S.W.3d 227 (Tex. 2001) . . . . . . . . . . . . . . 13

*Microsoft Corp. v. Manning*, 914 S.W.2d 602
  (Tex. App. — Texarkana 1995, writ dism'd.) . . . . . . . . . . . . . . . . . . . . . . . . .20

*Missouri Pac. RR. v. American Statesman,* 552 S.W.2d 99 (Tex. 1977) . . . . . . . . 17

*Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620 (5th Cir. 1999) . . . . . . . . . 19

*Oxford Finance Cos., v. Velez*, 807 S.W.2d 460
  (Tex. App. — Austin 1991, writ denied) . . . . . . . . . . . . . . . . . . . . . . . . . . . 17-19

*Phillips Petroleum Co. v. Yarbrough*, 405 S.W.3d 70 (Tex. 2013) . . . . . . . . . . . . 20

*Ski River Dev., Inc. v. McCallla*, 167 S.W.3d 121
  (Tex. App. — Waco 2005, pet. denied) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Sw. Bell Tel. Co. v. Mktg. on Hold Inc.*, 308 S.W.3d 909 (Tex. 2010) . . . . . . . . . 20

*Tex. Workers' Comp. Ins. Fund v. Mandlbauer*, 988 S.W.2d 750 (Tex. 1999) . . . . 9

*Torrington v. Stutzman,* 46 S.W.3d 829 (Tex. 2000) . . . . . . . . . . . . . . . . . . . . . . 9

*Univ. of Tex. Sw. Med. Ctr. v. Loutzenhiser*, 140 S.W.3d 351 (Tex. 2004) . . . . . . . .9

**STATUTES**

TEX. BUS. & COM. CODE § 2.302(a) (West 2015) . . . . . . . . . . . . . . . . . . . . . . . . .17

TEX. BUS. & COM. CODE § 17.45(A)(3) (West 2015) . . . . . . . . . . . . . . . . . . . . . . 16

**RULES**

TEX. R. CIV. P. 42 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 25

ISSUES PRESENTED

1.  Do Appellants have standing to appeal the trial court's certification of Appellees' claims against Richard Hicks when the order does not "injuriously affect" Appellants and "merely affects the rights of others?"

2.  Did the trial court abuse its discretion by concluding that members of a class consisting of all person who "paid a fee for enjoined services performed by Richard Hicks" were presently ascertainable by reference to objective criteria?

3.  Assuming Appellants have standing, did the trial court abuse its discretion by certifying Appellees' claims of unconscionable conduct and breach of fiduciary duty when Hicks had been expressly enjoined from collecting fees for his services?

4.  Assuming Appellants have standing, did the trial court abuse its discretion when it concluded that Appellees' claims of unconscionable conduct and breach of fiduciary duty were typical of the absent class members when all of the class members' claims arise from the same violation of the 2001 injunction and and all class members seek the same relief?

5.  Did the trial court abuse its discretion when it certified Appellees' request for declaratory judgment when the money damages flow directly and automatically from the requested declaration?

STATEMENT OF FACTS

For many years, Richard Hicks owned and operated a Medicaid planning service under the name "Elder Advisory Services." (1 CR at 130-31.) Hicks is not and has never been a licensed attorney in the State of Texas or any other state. (*E.g.,* 3 CR at 326.) In 2001, as a result of an investigation and complaint filed by the Unauthorized Practice of Law Committee of the State Bar of Texas, the 114th Judicial District Court of Smith County, Texas permanently enjoined Hicks and persons in active concert or participation with him from *"engaging in, or aiding or abetting any person in engaging in, the following acts **unless** they are at the time of such acts (i) an attorney duly licensed by the State of Texas or (ii) employees of an attorney duly licensed by the State of Texas and working under the direct and active supervision of an attorney duly licensed by the State of Texas:*

a.      *preparing a qualified income trust (otherwise known as a Miller trust);*

b.      *preparing Powers of Attorney;*

c.      *advising persons regarding the creation of a Miller Income Trust or a Power of Attorney provided that this restraint shall not prohibit a person enjoined by this judgment from referring a person to an attorney licensed to practice law in Texas for the purpose of obtaining advice from such attorney regarding the creation of a Miller Income Trust or a Power of Attorney;*

d.      *selling, advertising, mailing representations concerning or recommending the purchase of a Miller Trust;*

1

e.   *preparing for any person other than Defendants documents for the creation of a Miller Trust;*

f.   *providing advice to any person other than Defendants concerning a Miller Trust;*

g.   *providing advice for a fee to any person other than Defendants regarding how that person, or a relative (by marriage or consanguinity) or a principal under a power of attorney may become qualified for Medicaid benefits;*

h.   *providing advice for a fee to any person other than Defendants regarding how that person, or a relative (by marriage or consanguinity) or a principal under a power of attorney may become qualified for benefits available under any program administered by the Social Security Administration or the Texas Department of Human Services;*

i.   *making case specific recommendations for a fee to any person regarding how that person or a relative (by marriage or consanguinity) or a principal under a power of attorney may become eligible for Medicaid benefits;*

j.   *making case specific recommendations for a fee to any person regarding how that person or a relative (by marriage or consanguinity) or a principal under a power of attorney may become eligible for benefits available under any program administered by the Social Security Administration or the Texas Department of Human Services;*

k.   *aiding, assisting or representing applicants and recipients in procuring Medicaid benefits from the Texas Department of Human Services for a fee and*

l.   *advertising assistance in procuring Medicaid benefits for a fee by any form of media including but not limited to mail, fax, internet, seminars, radio, television, newspaper, email or by solicitation by spoken word."*

(Appx. at Tab A -- Agreed Permanent Injunction & Final Judgment at pp. 1-3 [hereinafter referred to as the "Injunction"].)

Following entry of the Injunction, Hicks sought an association with a licensed Texas attorney in order to continue his practice. (4 RR at 11.) In 2004, Hicks began discussing with Peter G. Milne an association whereby Hicks would provide Medicaid pre-planning and qualification services to clients of Milne's firms. (1 CR at p. 130, ¶ 4.) Prior to entering into any agreement, Hicks told Milne of the requirements of the Injunction and provided Milne with a copy to review. (*E.g.,* 3 CR at 331-32.) Although Hicks made Milne aware of the Injunction and told him that he was required to be an employee of a law firm to provide Medicaid planning services, Milne did not hire him as an employee of Peter G. Milne, P.C. or Healy, Milne & Associates, P.C. (*E.g.,* 4 RR at p. 14, ll. 11-20.) In fact, Milne never even contemplated hiring Hicks as an employee. *Id.* Instead, Milne associated with Hicks in what he would call an "independent contractor" arrangement under which Hicks was to "interview potential clients, intake approved clients, gather and analyze financial data, draft documents and correspondence for review and approval and make application for Medicaid assistance on behalf of retained clients." (1 CR at p. 130, ¶ 4.) Hicks and Milne split the fees by Hicks on a percentage basis with Hicks receiving as much as 75% of the fees. (*E.g.,* 4 RR at p. 16, ll. 12-16.)

Throughout their association, Hicks and Milne jointly marketed their services with brochures and fliers touting "Elder Advisory Services" as "A Service of Peter G. Milne, P.C." and/or Healy, Milne Law Firm. (*E.g.*, 8 RR at pp. 138-41, 160-63, 288.)







4

Hicks also frequently used used Peter G. Milne, P.C. business cards and letterhead and signed his name as an "Associate" of the law firm. (*E.g.*, 8 RR at pp. 165, 167.)



Under the auspices of this relationship with Milne, Hicks provided enjoined services to 465 clients after January 1, 2005 without ever becoming a licensed attorney or an employee of a licensed attorney. (*E.g.*, 3 CR at 326; Appx. at Tab B — Hicks' Amended Answers to 1st Interrogs at No. 4.) Hicks also provided enjoined services to an additional 114 clients originated by Milne or his law firms (Milne's "Acknowledged Clients"). (*E.g.,* Appellants' Brf. at 4.) For his services, Hicks received $728,932.16 in fees from the 465 "un-acknowledged clients" and $320,120.75 in fees from Milne's firms as his share of the fees paid by the firms' Acknowledged Clients for Hicks' enjoined services. (*E.g.,* Appx. at Tab B — Hicks' Amended Answers to 1st Interrogs at Nos. 4-5 & 7.) Hicks has provided a list of all persons who paid him for enjoined services during his association with Milne, admitted that all of the services he provided were within the scope of the Injunction and testified that Milne did not provide "direct and active supervision." (*E.g.,* 3 CR at 335.) In fact, he recalls that Milne specifically authorized him to work completely independently on 127 client files without any supervision of any kind. (3 CR at 337-40.)

Val & Joy Ryan brought this action on behalf of all persons who paid a fee for enjoined services performed by Hicks during his association with Milne and his firms. They alleged causes of action for breach of fiduciary duty and unconscionable conduct. They also alleged that Hicks and Milne and/or his firms constituted a joint venture, joint enterprise, partnership and/or conspiracy. They

moved the trial court to declare that neither Hicks, Milne or Milne's firms could receive fees for the enjoined services because Hicks was not an "employee" of Milne or his firms. They asked court to order a refund of all fees paid for enjoined services together with treble and exemplary damages plus attorney's fees. On November 26, 2014, the trial court certified Appellees' claims of breach of fiduciary duty and unconscionable conduct against Richard Hicks. (3 CR at 526.) The trial court declined to certify Appellees' claims of unconscionable conduct and breach of fiduciary duty against Appellants. *Id.* In this appeal, Appellants seek to challenge (1) the propriety of the class definition; (2) the certification of the unconscionable conduct claim against Hicks on grounds of predominance; (3) the certification of both the unconscionable conduct and breach of fiduciary duty claims against Hicks on grounds that Appellees' claims are not typical of the class as a whole and (4) the certification of the declaratory judgment class against Appellants because the monetary relief predominates. Richard Hicks did not appeal any portion of the trial court's order.

SUMMARY OF THE ARGUMENT

Appellants have no standing to challenge the trial court's certification of Appellees' claims against Richard Hicks because they are not personally aggrieved by that decision. Even assuming Appellants have standing, the trial court did not abuse its discretion. The trial court did not certify a fail-safe class because the class members are presently ascertainable by reference to objective criteria without reference to the merits of the case. No individualized inquiries will be necessary to determine Appellees' claims for unconscionable conduct because Hicks' conduct was unconscionable as a matter of law. Appellees' claims are typical of the class as a whole in that they arise out of the same course of conduct as those of the class as a whole and are based on the same legal theories. Finally, the trial court properly concluded that declaratory relief was appropriate because the damages sought will flow automatically from the court's interpretation of the 2001 permanent injunction.

1.  Do Appellants have standing to appeal the trial court's certification of Appellees' claims against Richard Hicks when the order does not "injuriously affect" Appellants and "merely affects the rights of others?"

Standing is a component of subject matter jurisdiction. *Brown v. Todd*, 53 S.W.3d 297, 305 (Tex. 2001). Subject matter jurisdiction cannot be waived or conferred by agreement, and it must be considered by a court *sua sponte*. *Univ. of Tex. Sw. Med. Ctr. v. Loutzenhiser*, 140 S.W.3d 351, 358 (Tex. 2004). Only a party whose own interest has been prejudiced has standing to appeal. *E.g., Torrington v. Stutzman,* 46 S.W.3d 829 (Tex. 2000). Thus, as this Court has recently noted, "appealing parties may not complain of errors that do not injuriously affect them or that merely affect the rights of others." *In the Interest of R.T.M.*, 2014 Tex. App. LEXIS 12935, *11 (Tex. App. — Texarkana 2014, no pet. h.)(citing *Tex. Workers' Comp. Ins. Fund v. Mandlbauer*, 988 S.W.2d 750, 752 (Tex. 1999)). Likewise, in *Matbon, Inc. v. Gries,* 287 S.W.3d 739 (Tex. App. — Eastland 2009, no pet.), the Eastland Court of Appeals held that a party could not appeal a trial court's order awarding sanctions against its attorneys when the attorneys themselves did not appeal. *Id*. at 740.

In *R.T.M.*, 2014 Tex. App. LEXIS 12935, this Court found that parents whose rights were being terminated had no standing to appeal the trial court's decision to place their children with the State of Texas rather than with a relative who had intervened in the case. *Id*. at 11-12. The intervenor did not appeal. *Id*.

9

at 11. This Court found that although the parents' appeal "shared facts" with the intervenor's potential complaint over the placement decision, "the legal impact of the rulings on the different categories of individuals are not related." *Id*. In such a situation, the Court reasoned, "the alleged error would not 'injuriously affect' the parents." *Id*. Therefore, they did not have the standing to bring the issue on appeal, and the Court could not address it. *Id*.; *see also In the Interest of L.K.*, 2012 Tex. App. LEXIS 10569 (Tex. App. — Tyler 2012, pet. denied).

The Second Circuit Court of Appeals recently dismissed an appeal of a class certification order after concluding that the appellant had no standing to appeal. *Bhatia v. Piedrahita*, 756 F.3d 211 (2d Cir. 2013). In *Bhatia*, 756 F.3d. at 211, the district court certified a class in connection with the settlement of claims against various defendants implicated in the Berhard Madoff Ponzi scheme. *Id.* at 215. A group of non-settling defendants appealed to challenge a provision of the settlement agreement which provided that investors submitting claims under the settlement consented to the jurisdiction of the trial court solely for purposes of the settlement. *Id*. They contended that this provision "prejudice[d] their rights to assert that participation in the settlement should bar or limit investor claims against them in other litigation." *Id*. The investors countered that the non-settling defendants had no standing to appeal the court's decision because they were not directly affected by the court's order. *Id.* The Second Circuit agreed and dismissed the appeal. *Id*.

In so holding, the court first noted that standing is a threshold requirement of the propriety of judicial intervention. *Id*. at 217. In order to meet this requirement, the court held, a party must have sustained an "injury in fact." *Id*. at 218. More particularly, the party must have suffered the "invasion of a legally protected interest in a manner that is ***concrete and particularized*** and ***actual and imminent***, not conjectural or hypothetical." *Id*. (emphasis added). In addition, the injury must be fairly traceable to the alleged conduct and it must be likely that the injury will be redressed by a favorable decision. *Id*. Thus, a non-settling defendant generally lacks standing to object to a court order approving a partial settlement unless it demonstrates that it will "sustain some formal legal prejudice as a result of the settlement." *Id*. In this case, the court continued, the non-settling defendants contend that the final order "*effectively* strips them of defenses against the settling plaintiffs in other fora." *Id*. This allegation, the court held, "does not rise to the required level of formal legal prejudice necessary for standing." *Id*. That level of standing, the court noted, "exists only in those rare circumstances when, for example, the settlement agreement formally strips a non-settling party of a legal claim or cause of action . . . invalidates a non-settling party's contract rights or the right to present relevant evidence at trial." *Id.* It is not sufficient for appellants to show that they were "somehow undercut through the loss of some practical or strategic advantage." *Id*. at 219. Because the non-settling defendants have not done so, the court concluded, the appeal must be dismissed. *Id*.

Here, even more than in *Bhatia*, 756 F.3d. at 211, Appellants have suffered no "formal legal prejudice" by virtue of the court's order certifying the claims against Richard Hicks. *Cf. Bhatia*, 756 F.3d. at 219. While in *Bhatia*, 756 F.3d. at 211, the court had approved an agreement arguably impacting substantive rights of the non-settling defendants, in this case there is no agreement dictating substantive rights. The court's order is purely procedural. It does nothing to strip Appellants of any claim or defense, invalidate any of their contractual rights or preclude them from presenting relevant evidence at trial. *Cf. id.* at 218. Nothing in the court's order, for example, in any way impairs Appellants' right to seek contribution or indemnity from Hicks or to prove and enforce any agreement they may have had with him. *Id.* At most, the court's order "undercuts" Appellants' litigation position by depriving them of some "practical or strategic advantage" which they might conceivably advance had the court not certified the claims against Hicks. *Cf. id.* at 219. This is not sufficient to establish standing to appeal. *Id.* Just as this Court held in *R.T.M.,* because the court's certification of the claims against Hicks does not "injuriously affect" Appellants and "merely affects the rights of others," Appellants lack standing to assert Issues Nos. 2 and 3 and that portion of their appeal should be dismissed. *Cf. In the Interest of R.T.M.*, 2014 Tex. App. LEXIS 12935 at *11.

12

2.      Assuming Appellants have standing, did the trial court abuse its discretion by concluding that the members of a class consisting of all person who "paid a fee for enjoined services performed by Richard Hicks" were presently ascertainable by reference to objective criteria?

As this Court has noted, a properly defined class is essential to the maintenance of a class action. *Bailey v. Kemper Cas. Ins. Co.*, 83 S.W.3d 840, 851 (Tex. App. — Texarkana 2002, pet. dism'd w.o.j.). Such a class definition determines who is entitled to notice, who is entitled to relief, what relief can be awarded, and who will be bound by the judgment. *Ford Motor Co. v. Sheldon*, 22 S.W.3d 444, 453 (Tex. 2000). This means that class members must be ascertainable by reference to objective criteria. *Charlie Thomas Courtesy Leasing, Inc. v. Taylor*, 44 S.W.3d 684, 687 (Tex. App. — Houston [14th Dist.] 2001, no pet.). Thus, the class "should not be defined by criteria that are subjective or that require an analysis of the merits of the case." *Intratex Gas Co. v. Beeson*, 22 S.W.3d 398, 403 (Tex. 2000). Additionally, while the definition cannot be overly broad, *see McAllen Med. Ctr. v. Cortez, Inc.*, 66 S.W.3d 227 (Tex. 2001), the fact that some class members may ultimately not prevail on their claims for money damages does not make them "claim-less" or transform their uniform interest in the declaratory relief into individual issues precluding class certification, *see Clements v. League of United Latin Am. Citizens*, 800 S.W.2d 948, 951 (Tex. App. — Corpus Christi 1990, no writ).

In *Bailey*, 83 S.W.3d at 840, for example, this Court affirmed the certification of a class consisting of all persons "to whom or on whose behalf [the defendants] paid personal injury protection benefits in the form of drafts naming health care providers as sole or additional payees since February 1, 1996." *Id.* at 849. In so holding, the Court directly overruled the defendant's objection that the court would have to determine the merits of some of the issues in the case in order to determine the members of the class. *Id.* at 850. To the contrary, this Court noted, determining membership in the class required only that the trial court identify (1) persons to whom the defendant had made personal injury protection benefit payments since February 1, 1996; (2) checks including providers as a named payee and (3) to whom or on whose behalf the payments had been made. *Id.* at 851. All of these questions, this Court noted, could be answered by reference to objective criteria, namely, the defendant's own payment records. *Id.* Further, this Court noted that the definition did not require any analysis of the merits of the case in order to identify the members of the class expressly holding that the definition "avoids inclusion of merit-based criteria that would create a fail-safe class." *Id.* at 852.

In this case, the trial court likewise certified a class which is presently ascertainable by reference to objective criteria. *Cf. Bailey*, 83 S.W.3d at 840. The trial court's Order specified that the class would include only those persons who "paid a fee for enjoined services performed by Richard Hicks since January 1,

14

2005." (Clerk's Record at Vol. 4, p. 527.) The trial court further specified that "enjoined services" included only those services listed in the 2001 permanent injunction issued by the 114th Judicial District Court of Smith County, Texas. *Id*. Thus, in order to identify the members of the class, the court need only identify (1) persons who paid a fee to Richard Hicks (2) for any service listed in the permanent injunction (3) since January 1 of 2005. As in *Bailey*, 83 S.W.3d at 840, the members of the class may thus be identified by reference to objective criteria and without any analysis of the merits of the parties' claims. Nothing about that exercise requires an analysis of the merits of the parties' claims.

To the contrary, Appellees have already conducted this analysis and identified every member of the proposed class. During the July 10, 2014 hearing, Appellees provided the trial court with a spreadsheet identifying 460 individuals to whom Hicks provided enjoined services since 2005. (8 RR at Pls.' Ex. 1.) In addition Appellees provided the court with documentation from all 460 files evidencing the services Hicks provided and the fees he collected. In his Amended Answers to Appellees' First Interrogatories, Hicks confirmed that accuracy of this information and identified five additional class members. (Appx. at Tab B — Hicks' Answers to Interrog. Nos. 4-5.) He further confirmed that all of the services he provided to these clients were within the scope of the 2001 injunction. *Id*. at Answer to Interrog. No. 4. Thus, not only are the class members "presently ascertainable" — they have been identified. *Cf. Bailey*, 83 S.W.3d at 840.

15

3.   Assuming Appellants have standing, did the trial court abuse its discretion by certifying Appellees' claims of unconscionable conduct when Hicks had been expressly ordered not to provide the enjoined services for a fee?

The Texas Deceptive Trade Practice Act expressly provides that a consumer may recover damages for an unconscionable action or course of action that is the producing cause of damages. TEX. BUS. & COM. CODE § 17.45(a)(3) (West 2015). An unconscionable action or course of conduct is any "act or practice that, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience or capacity of the consumer to a grossly unfair degree." *Id.* at § 17.45(5)(a). To prove an unconscionable action or course of action, a plaintiff must show that the defendant "took advantage of his lack of knowledge and that the resulting unfairness was glaringly noticeable, flagrant, complete and unmitigated." *Insurance Co. of N. Am. v. Morris*, 981 S.W.3d 667, 677 (Tex. 1998). The test is whether the consumer was taken advantage of to a grossly unfair degree. *Latham v. Castillo*, 972 S.W.2d 66, 72 (Tex. 1998). In making this determination, the court examines the entire transaction and applies an objective standard for which *scienter* is irrelevant. *Chastain v. Koonce*, 700 S.W.2d 579, 583 (Tex. 1985).

Courts routinely determine unconscionability as a matter of law. *E.g., Ski River Dev., Inc. v. McCallla*, 167 S.W.3d 121, 136 (Tex. App. — Waco 2005, pet. denied); *In re: Turner Bros. Trucking Co.*, 8 S.W.3d 370, 375 (Tex. App. — Texarkana 1999, no pet.). In fact, the Business & Commerce Code, expressly

16

empowers courts to determine whether a contract or clause is unconscionable as a matter of law. TEX. BUS. & COM. CODE § 2.302(a) (West 2015); *McCallla*, 167 at 136. In performing such an analysis, this Court has held that it "examines the entire atmosphere in which the agreement was made; the alternatives, if any, available to the parties at the time the contract was made; the 'non-bargaining ability' of one party and whether the contract was oppressive or unreasonable." *In re: Turner Bros. Trucking Co.*, 8 S.W.3d at 375. The goal of the court's analysis is to "determine if the method by which the agreement was procured or the terms of the agreement were such as to warrant this Court's intervention." *Id*. at 376.

Similarly, just as with any other issue of fact, a court may determine unconscionability as a matter of law "when reasonable minds could not differ about the conclusion to be drawn from the facts in the record." *See Oxford Finance Cos., v. Velez*, 807 S.W.2d 460, 466 (Tex. App. — Austin 1991, writ denied); *see also Childs v. Haussecker,* 974 S.W.2d 31, 44 (Tex. 1998) (commencement of limitations period); *Missouri Pac. RR. v. American Statesman,* 552 S.W.2d 99, 105 (Tex. 1977)(causation of damages); *City of the The Colony v. N. Tex. Mun. Water Dist.,* 272 S.W.3d 699, 732 (Tex. App. — Fort Worth 2008, pet. dism'd)(ratification of contract); *Mack v. McKenzie,* 900 S.W.2d 445, 449 (Tex. App. — Texarkana 1995, writ denied)(causation); *Kendrick v. Allright Parking,* 846 S.W.2d 453, 458 (Tex. App. — San Antonio 1992, writ denied)(foreseeability).

In *Oxford Finance Cos., v. Velez*, 807 S.W.2d 460, 466 (Tex. App. — Austin 1991, writ denied), the Austin Court of Appeals expressly held that the conduct in question rose to the level of unconscionability as a matter of law. *Id.* at 466. There, a homeowner borrowed money to finance improvements to her property. When she discovered defects in the contractor's work, she refused to make the payments. The lender foreclosed on her home and sold it to an investment company. After the trial court voided the foreclosure and sale, the investment company — which had lost all rights in the property it had purchased — sought restitution of the money it had paid. The trial court ordered the lender to make restitution. On appeal, the lender correctly noted that there had been no jury finding that its retention of the money would be unconscionable, but the court refused to disturb the trial court's order. "***As a matter of law***," the court held, "[***the lender's] retention of the purchase price under these circumstances would be unconscionable***." *Id*. at 466 (emphasis added).

In this case, the trial court did not abuse its discretion in certifying Appellees' claims for unconscionable conduct because Hicks' conduct was unconscionable as a matter of law. *Cf. Oxford*, 807 S.W.2d at 460. No reasonable mind could conclude that Hicks did not take "grossly unfair" advantage of the class members by practicing law in direct violation of an express court order. *Cf. American Statesman,* 552 S.W.2d at 105. Likewise, no reasonable mind could conclude that any member of the class would have agreed to pay Hicks for his

services had they known that he was expressly forbidden from providing those services for a fee. *Cf. id.* Thus, unlike in *Peltier Enters., Inc. v. Hilton*, 51 S.W.3d 616, 623-24 (Tex. App. — Tyler 2000, no pet.), there is no need in this case for the fact finder to make "individual inquiries into whether and to what extent each of these clients, or their POA or responsible parties on their behalf, were taken advantage of due to lack of knowledge, ability, experience or capacity, if any." (Appellants' Br. at 14.) Hicks was forbidden from providing the enjoined services. He was forbidden from collecting fees for these services. Under these circumstances, his conduct was unconscionable as a matter of law. *Cf. Oxford*, 807 S.W.2d at 466.

4. Assuming Appellants have standing, did the trial court abuse its discretion by finding that Appellees' claims for unconscionable conduct and breach of fiduciary duty against Hicks were typical of all class members when each of the class members' claims arise from the same violations of the 2001 injunction and and all class members seek the same relief?

The test for typicality is not demanding. *E.g., Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 625 (5th Cir. 1999). Generally, it requires that the class representative possess the same interests and suffer the same injuries as the class. *Bailey v. Kemper Cas. Ins. Co.*, 83 S.W.3d 840, 853 (Tex. App. — Texarkana 2002, pet. dism'd w.o.j.). The claims need not be identical or perfectly coextensive, so long as they are "substantially similar." *E.g., Cedar Crest Funeral Home, Inc. v. Lashley*, 889 S.W.2d 325, 331 (Tex. App. — Dallas 1993, no writ).

19

The critical inquiry is whether the class representative's claims have the same essential characteristics as those of the class as a whole. *Microsoft Corp. v. Manning*, 914 S.W.2d 602, 613 (Tex. App. — Texarkana 1995, writ dism'd.). Thus, a class representative's claim is typical when "it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *E.g., Phillips Petroleum Co. v. Yarbrough,* 405 S.W.3d 70, 79 (Tex. 2013); *Sw. Bell Tel. Co. v. Mktg. on Hold Inc.*, 308 S.W.3d 909, 920 (Tex. 2010). So long as the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality. *E.g., James v. City of Dallas*, 254 F.3d 552 (5th Cir. 2001); *Bailey*, 83 S.W.3d at 854.

In *Bailey*, 83 S.W.3d at 840, this Court applied the typicality test in a class action. There, the class sought a declaration that the policy and the Texas Insurance Code required the carrier to pay benefits directly to the insured unless it had received an assignment of benefits executed by the covered person. *Id*. The carrier argued that Bailey's claims were not typical because, unlike Bailey, some members of the class had actually executed and delivered an assignment. *Id*. at 854. In rejecting this challenge, the Court noted that Bailey's claims arose out of the same course of conduct as those of the class as a whole — "Kemper's interpretation of the insurance agreement." *Id*. This common course of conduct, the Court reasoned, "provides the nexus between the injuries suffered by Bailey

20

and those suffered by the other members of the class." *Id*. Thus, "Although the particular facts of each class member's case may differ, Bailey's concerns over timeliness and adequacy [of the assignment] are typical concerns shared by the class." *Id*.

Here, as in *Bailey*, 83 S.W.3d at 840, Appellees' claims arise from the same course of conduct and are based on the same legal theories as those of the class as a whole. *Cf. id*. at 853-54. Appellees contend that Hicks committed the unauthorized practice of law in violation of the Injunction. They state claims for unconscionable conduct and breach of fiduciary duty and seek a refund of the fees which the Injunction expressly forbid him from collecting. By definition, every member of the class has been subjected to the same course of conduct *(i.e.* Hicks provided enjoined services to every member of the class) and sustained the same damages *(i.e.* each member of the class paid a fee to Hicks for enjoined services). Whether Hicks' conduct constitutes a breach of fiduciary duty and/or an unconscionable course of conduct "are typical concerns shared by the class." *Cf. Bailey,* 840 S.W. 2d at 854. These concerns exist regardless of whether a class member had a written contract with Hicks or what Hicks may have told them about his relationship with Appellants. *Cf.* Appellants' Brf. at 15. Because the claims of Appellees and those of the class as a whole claims arise from the same course of conduct and share the same legal theory, such factual differences cannot defeat typicality. *Cf. Bailey,* 840 S.W.2d at 854.

5.    Did the trial court abuse its discretion when it certified Appellees' request for declaratory judgment when the money damages flow directly and automatically from the requested declaration?

Rule 42(b)(2) authorizes a class action when the party opposing the class has acted or refused to act on grounds generally applicable to the class as a whole thereby making appropriate final injunctive relief or corresponding declaratory relief." TEX. R. CIV. P. 42(b)(2). A properly defined (b)(2) class is "united by a collective harm that centers on the defendants' alleged unlawful conduct, not on individual injury." *Bratcher v. Monumental Life Ins. Co.*, 365 F.3d 408, 415 (5th Cir. 2004). As the Fifth Circuit has explained, (b)(2) certification "does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages." *Allison v. Citgo Petroleum Corp.,* 151 F.3d 402, 412 (5th Cir. 1998). Therefore, to be viable in a Rule 42(b)(2) class action, the monetary relief must "flow directly from liability to the class as a whole on the claims forming the basis of the injunctive or declaratory relief." *Id*. at 415. More simply, the monetary relief must be "capable of computation by means of objective standards and not dependent in any significant way on the intangible, subjective differences of each class member's circumstances." *Id*. Additional hearings to resolve the disparate merits of each individual's case should be unnecessary. *Id*.

In *Bratcher*, 365 F.3d at 408, the Fifth Circuit examined whether claims for money damages predominated in a class action alleging that the insurance companies had unlawfully charged black policyholders higher rates than white

22

policyholders.  *Id*.  There, the plaintiffs sought to certify a (b)(2) class to prohibit the collection of discriminatory premiums, reform the policies and obtain restitution of past overcharges.  *Id*. at 412-13.  The trial court refused to certify the class on grounds that the monetary relief did not flow from liability to the class as a whole because "many and a variety of individualized hearings would be required to determine personalize harm to each individual plaintiff."  *Id*. at 418.  On appeal, the Fifth Circuit reversed, holding that even though individual damages would depend on the "idiosyncrasies of each specific policy," they could be "objectively calculated through the use of standardized formulas or restitution grids."  *Id*. at 419.

In so holding, the court specifically noted that "[t]his is not a case in which class members are entitled to a one size fits all refund."  *Id*. at 418.  Nonetheless, none of the claims necessarily implicated the subjective differences of each plaintiff's circumstances. *Id*.  Assuming that unlawful discrimination is found,  the court reasoned, class members wold automatically be entitled to the difference between what a black customer and a white customer paid for the same policy.  *Id*. In the court's view, such damages flowed directly from liability in much the same manner as an award of backpay results from a finding of employment discrimination.  *Id*.  Thus, certification was appropriate even though the calculation of damages might require the construction of thousands of restitution grids because the "variables are identifiable on a classified basis" and none of them was "unique

23

to particular plaintiffs." *Id*. at 419. "The prevalence of variables common to the class," the court noted, "makes the damage computation virtually a mechanical task." *Id*.

In this case, the damages could hardly flow more directly and automatically from the requested declaratory judgment. In 2001, the 114th Judicial District Court permanently enjoined Richard Hicks from collecting fees for specific services unless he became either a licensed attorney or an employee working under the direct and active supervision of a licensed attorney. It is undisputed that throughout the class period, Hicks was neither an attorney nor an employee of an attorney. It is likewise undisputed that he provided the very services which the court forbid him to provide to every member of the class and that every member of the class paid him a fee for those services. Appellees seek a declaration that Hicks is not entitled to any of the fees which the court prohibited him from collecting. If the court makes the finding, every member of the class would be entitled to an automatic refund of the fees paid for the enjoined services. There will be no need for additional hearings, extrinsic evidence or individualized inquiries. Unlike *Bratcher*, nothing in this case requires even the construction of formulas or grids. *Cf. Bratcher,* 365 F.3d at 419. It is truly a case in which "class members are entitled to a one size fits all refund." *Cf. id.* at 418.

## CONCLUSION & PRAYER FOR RELIEF

Richard Hicks did not appeal any portion of the trial court's order. Because the order does not injure Appellants and only affects the rights of Hicks, Appellants have no standing to challenge the court's certification of Appellees' claims of unconscionable conduct and breach of fiduciary duty against Hicks. Even assuming that Appellants have standing to appeal these issues, the trial court did not abuse its discretion in certifying Appellees' claims under Rule 42, Tex. R. Civ. P. The class is presently ascertainable by reference to objective criteria without any sort of inquiry into the merits of the case. Likewise, common issues predominate in Appellees' claims for unconscionable conduct because the conduct of Richard Hicks was unconscionable as a matter of law. Thus, there is no factual dispute that would require individualized inquiry of the sort imagined by Appellants. In the same way, Appellees' claims are typical of those of the class as a whole in that they arise from the same course of conduct and assert the same legal theories and damages. Finally, the money damages in this case do not predominate in that they flow directly from the requested declaratory relief.

***WHEREFORE, PREMISES CONSIDERED, VAL & JOY RYAN*** respectfully pray that the Order of the trial court be, in all respects, ***AFFIRMED*** and that this Court grant such other and further relief to which they are justly entitled.

25

Respectfully submitted,

**THE LAW OFFICE OF JAMES HOLMES, P.C.**

By: /S/ *James A. Holmes*

James A. Holmes
State Bar No. 00784290

212 SOUTH MARSHALL
HENDERSON, TEXAS 75654
(903) 657-2800
(903) 657-2855 (fax)
jh@JamesHolmesLaw.com

**MERCY CARTER TIDWELL, LLP**

John R. Mercy
Texas Bar No. 13947200

1724 Galleria Oaks Drive
Texarkana, Texas 75503
(903) 794-9419
(903) 794-1268 (fax)
jmercy@texarkanalawyers.com

**ATTORNEYS FOR APPELLEES**



26

CERTIFICATE OF COMPLIANCE WITH RULE 9.4(e)

1.  This brief complies with the type-volume limitation of Texas Rule of Appellate Procedure 9.4.(e) because, according to Apple Pages 5.5.2 word count function, it contains 6,014 words on pages 1-25 excluding the parts of the brief exempted by Rule 9.4.(e)(i)(1).

2.  This brief complies with the typeface requirements of Texas Rule of Appellate Procedure 9.4.(e) because it has been prepared in proportionally spaced typeface using Apple Pages 5.5.2 software in Times New Roman 14 point font in text and Times New Roman 12 point font in the footnotes.

/s/ *James A. Holmes*
James A. Holmes

CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing Brief of Appellees Val & Joy Ryan was served by electronic service and/or email to the following Counsel of Record on this, the 9th day of March 2015.

Peter G. Milne
PETER G. MILNE, P.C.
327 West Houston
Tyler, Texas 75702
pmilne@tylertaxlaw.com

J. Chad Parker
THE PARKER FIRM, P.C.
3808 Old Jacksonville Road
Tyler, Texas 75701
cparker@theparkerfirm.net

/s/ *James A. Holmes*
James A. Holmes